**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JULIAN GORMAN,                           CASE NO. 2:10-CV-1168

      Petitioner,

v.                                        JUDGE MICHAEL H. WATSON
                                          **Magistrate Judge Kemp**
WARDEN, CHILLICOTHE
 CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner Julian Gorman, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This case is before the Court on the petition, the addendum to the petition which was filed on January 3, 2011, the Return of Writ (with exhibits), petitioner's original reply, the amended petition, the supplemental return of writ, and, finally, petitioner's supplemental reply (filed April 6, 2012).  For the following reason, it will be recommended that the petition be denied.

## I. PROCEDURAL HISTORY

The September, 2006 term of the Franklin County, Ohio grand jury indicted petitioner on six counts of rape, four counts of gross sexual imposition, and two counts of disseminating matter harmful to juveniles.  The charged conduct involved a single victim, petitioner's daughter, and allegedly occurred between June 1, 2005 and June 30, 2006.  *Return of Writ*, Exhibit One.

Petitioner pleaded not guilty and elected to be tried by a jury.  The first trial

ended in a mistrial because the jury was unable to reach a verdict. A second trial took

place beginning on August 18, 2008. Eight days later, the jury returned a verdict,

finding petitioner guilty of three counts of rape and three counts of gross sexual

imposition. He was acquitted of the remaining counts. The trial judge then sentenced

him to a total of 22 years of imprisonment and five years of mandatory post-release

control. Additionally, he was classified as a Tier III sexual offender. *Return of Writ*,

Exhibit Five.

Represented by new counsel, petitioner timely appealed his conviction and

sentence to the Tenth District Court of Appeals. The State of Ohio also appealed, citing

as error a ruling by the trial judge concerning closing argument. Those appeals were

consolidated.

In his appeal, petitioner raised the following four assignments of error:

**ASSIGNMENT OF ERROR ONE**:

I. THE TRIAL COURT COMMITTED ERROR BY ALLOWING HEARSAY
TESTIMONY AGAINST APPELLANT, THEREBY DEPRIVING HIM OF HIS
RIGHT TO CONFRONT WITNESSES CONTRA THE U.S. AND OHIO
CONSTITUTIONS.

**ASSIGNMENT OF ERROR TWO**:

II. THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING
HEARSAY STATEMENTS CONTAINED IN A SOCIAL WORKER'S REPORT
CONTRA EVIDENCE RULE 803(4).

**ASSIGNMENT OF ERROR THREE**:

III. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING A

POLYGRAPH EXPERT TO TESTIFY THEREBY VIOLATED (SIC) APPELLANT'S DUE PROCESS UNDER BOTH THE OHIO AND FEDERAL CONSTITUTIONS.

**ASSIGNMENT OF ERROR FOUR**:

IV. WHEN COUNSEL'S PERFORMANCE IS DEFICIENT IN THE CONDUCT OF TRIAL COUPLED WITH PREJUDICE INURING TO THE DETRIMENT OF THE APPELLANT, HIS RIGHT TO A FAIR TRAIL AND EFFECTIVE ASSISTANCE OF COUNSEL ARE VIOLATED CONTRA THE OHIO AND FEDERAL CONSTITUTIONS.

*Return of Writ*, Exhibit Nine. In an opinion filed on June 16, 2009, the state court of appeals overruled each of petitioner's assignments of error and sustained the State's assignment of error, but, concluding that the issue raised by the State could not result in a new trial on any of the counts for which petitioner was acquitted, affirmed the lower court's judgment. *Return of Writ*, Exhibit 11; *State v. J.G.A.*, 2009 WL 1700118 (Franklin Co. App. June 16, 2009).

Petitioner, acting *pro se*, appealed that decision to the Ohio Supreme Court. Although he did not timely file his appeal, the Supreme Court granted him leave to file a delayed appeal. *State v. J.G.*, 123 Ohio St. 3d 1421 (October 14, 2009). In his memorandum in support of jurisdiction, petitioner reiterated his first, second and fourth claims, omitting any reference to the testimony of a polygraph examiner. The Ohio Supreme Court subsequently declined to accept the case for review. *Return of Writ*, Exhibit 17; *State v. J.G.*, 124 Ohio St. 3d 1415 (December 30, 2009).

During this same time period, petitioner filed a *pro se* motion to reopen his

appeal, arguing that his appellate counsel was ineffective for failing to raise an issue
about whether the indictment, which charged multiple counts of criminal behavior
using identical language, had provided him with fair notice of the charges, for failing to
argue that the admission of other "bad acts" evidence was improper and prejudicial, for
failing to pursue a claim of unlawful search and seizure, and for failing to raise an issue
that the trial court had exceeded its sentencing authority under *State v. Foster*, 109 Ohio
St. 3d 1 (2006). In a decision dated February 4, 2010, the state court of appeals denied
the application, finding that all of the claims of ineffective assistance of appellate
counsel were without merit. *Return of Writ*, Exhibit 26. Plaintiff claims that he
subsequently requested leave to file a delayed appeal of this decision to the Ohio
Supreme Court, but no such document appears on the online dockets of either the Ohio
Supreme Court or the Tenth District Court of Appeals. In any event, petitioner
concedes that he was not permitted to take a delayed appeal of the denial of his
application to reopen.

Petitioner also sought collateral relief in the trial court. First, he filed a post-
conviction petition with the state trial court pursuant to Ohio Rev. Code §2953.21 on
May 21, 2009. He raised claims of ineffective assistance of counsel and unconstitutional
search and seizure. The trial court overruled the petition on July 22, 2009, *Return of
Writ*, Exhibit 20, and that decision was not appealed. Second, he filed a motion for
resentencing on August 18, 2010, pursuant to Ohio R. Crim. P. 32(A). According to the
public website maintained by the Franklin County Clerk of Courts, see

4

http://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline, that motion was overruled

on January 18, 2012. Petitioner has since moved to disqualify the trial court judge, but

did not appeal the decision overruling his motion to correct sentence. *Id.*

## II. THE FACTS

The basic facts of the case are recited in the state court of appeals decision. This

Court is generally bound to accept those facts as true for purposes of this action. *See* 28

U.S.C. §2254(d)(1). They are as follows:

> {¶ 2} The Franklin County Grand Jury indicted defendant on six counts of rape, four counts of gross sexual imposition, and two counts of disseminating matter harmful to juveniles. The charges alleged that defendant sexually abused his daughter, J.A.G., when she was less than 13 years old. Defendant pleaded not guilty.

> {¶ 3} Defendant decided to take a polygraph examination. Before the examination, defendant, defendant's counsel, and plaintiff stipulated that the person administering the examination is authorized to testify about the results. Steve Herron administered the examination. Defendant denied sexually abusing J.A.G., but Herron concluded that defendant was not telling the truth.

> {¶ 4} A jury trial ensued. Herron testified about the results of defendant's polygraph examination, and J.A.G. testified about defendant sexually abusing her. Also testifying was Diane Lampkins of the Center for Child and Family Advocacy ("Advocacy Center") at Children's Hospital. Lampkins testified as follows. Lampkins is a social worker and forensic interviewer at the Advocacy Center. Lampkins interviews a sex abuse victim with no one else present in the room. Lampkins avoids the use of leading or suggestive questions during the interview. Afterward, the child has a medical examination. The medical examiner relies on information that Lampkins gathered, and this information assists the medical examiner in making an accurate medical diagnosis. Lampkins' written summary of her interview goes to the medical records department.

> {¶ 5} Lampkins interviewed J.A.G. A police detective, a prosecutor, and

nurse Gail Hornor, J.A.G.'s medical examiner, watched the interview from closed circuit television. Police and prosecutors watch these interviews in order not to subject the child to repeated interviews. J.A.G.'s interview was recorded on video, and police have a copy of the video. Lampkins said the video is not part of the medical record. The defense objected to the prosecution playing the video and claimed that the evidence was cumulative to J.A.G.'s testimony. Plaintiff did not play the video, but, without objection, Lampkins testified about the details that J.A.G. provided on how defendant sexually abused her.

{¶ 6} Hornor examined J.A.G. after the interview and testified as follows. Hornor watched the interview. It assisted her medical assessment and diagnosis and helped her determine whether to test J.A.G. for sexually transmitted diseases. Hornor testified about the sex abuse that J.A.G. disclosed to Lampkins. The trial court sua sponte instructed the jury that this testimony is "hearsay" and "offered for background information about what the people at the [Advocacy Center] did and how the medical examination was produced." (Aug. 20, 2008 Tr. 104.) The court told the jury that "you have to consider [J.A.G.'s] testimony in regard to what actually was her version of events." (Aug. 20, 2008 Tr. 104.)

{¶ 7} The prosecution sought admission of the summary report of Hornor and Lampkins. The report reiterated J.A.G.'s sex abuse disclosures. The defense objected, arguing that the report was cumulative to J.A.G.'s testimony. The trial court overruled the objection and admitted the report into evidence.

{¶ 8} During closing argument, defense counsel referred to a newspaper report of a prisoner who failed polygraph examinations, but was ultimately exonerated through DNA evidence. The prosecution objected, but the trial court overruled the objection.

{¶ 9} The jury found defendant guilty of three counts of rape and three counts of gross sexual imposition. The jury found defendant not guilty on the remaining charges.

*State v. J.G.A.*, 2009 WL 1700118, *1-2.

### III. PETITIONER'S CLAIMS

As noted, petitioner has filed both an initial and an amended petition. In his various filings, he raises these claims, reprinted exactly as petitioner asserts them:

**Ground One**: "Petitioner was deprived of his Constitutional Rights in Violations of the 5th and 14th Amendment of the U.S. Constitution. When Julian Gorman rights were violated under Double Jeopardy due to multiple indifferent count indictment. This left him unable to protect himself. Double Jeopardy, being charged multiple times for the same crime or animus act. Petitioner Gorman's conviction was unconstitutional and violated Double Jeopardy. Petitioner Gorman's right to equal protection were violated by the 5th Amendment of the United States Constitution."

**Supporting Facts:** "I have multiple indifferent counts for the same time frame. Carbon copy counts or multiple indifferent count indictment for the same time frame or animus act. Count 1 and Count 2 Rape to wit: Fellatio. I was found not guilty on the first count and guilty on the section count. Just like Counts 1 and 2, Counts 5, 6 and Counts 10, 11 and Counts 4, 9 are the same counts, same location, same crime, same time frame, same alleged victim."

**Ground Two**: "Petitioner Gorman's illegal search and seizure of his cell phone, violated Petitioner Gorman's right under the Fourth Amendment of the United States Constitution."

**Supporting Facts:** "No search warrant was ever issued or written consent from Petitioner to search his cell phone on his initial arrest day.

**Ground Three**: "Petitioner Gorman was deprived of his Fourth Amendment, Fifth Amendment, right to protection. Under the Fourth Amendment of the illegal search and seizure when the trial court overrule defense counsel motion to suppress States Exhibit (4A) and (4B) the Dvd's and States exhibit (1) black lingerie that was unlawfully taken from Petitioner's residence."

**Supporting Facts:** "The alleged victim's mother and the alleged victim took items from an apartment I was staying at and took the items to Detective Melinda Hunt and the Detective took the Dvd's and Longerie outfit, without first having a search warrant or consent from me. The illegally seized items were used in trial as evidence by the prosecution."

**Ground Four**: "The trial court violated petitioner's rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 10 and 16, Article 1 of the Ohio Constitution when the trial court failed to merge allied offense of similar import for sentencing."

**Supporting Facts:** "I was convicted of Rape and Rape and GSI and GSI. The State used the same evidence to support the rape convictions as the gsi convictions. According to testimony the GSI would have had to supposedly happen at the same time as the rapes occurred. I was sentenced for both offenses, where they supposedly arised from the same conduct."

**Ground Five**: "Petitioner Gorman was deprived of his Constitutional Rights to equal protection under the First, Fifth and Fourteenth Amendment when the trial court judge sentenced petitioner to a vindictive sentence of 22 years."

**Supporting Facts:** "After the First trial that ended up in a hung jury. I wrote a grievance against Judge Frye. The letter was sent to the Ohio Bar Association, The Supreme Court of and the Supreme Court of the United States. At sentencing, before the judge read me my sentence, he brung up the letter I wrote (the grievance letter)."

**Ground Six**: "Petitioner Gorman's conviction was unconstitutional and violated by the Sixth Amendment when defense counsel failed to investigate witness and call witness for Petitioner's defense."

**Supporting Facts:** "Defense counsel for me failed to investigate the alleged crimes committed and did not call one single rebuttal witness for the states several expert witnesses."

**Ground Seven**: "Petitioner Gorman's rights were violated with inadequate verdict forms. This was prejudicial and a Federal violation to the Sixth Amendment and the equal protection of due process under the Fourteenth Amendment of the United States Constitutional, and a violation of the Ohio Constitution Article 1, Section 10 the defective jury forms were inadequate due to the lacking of the elements of crimes and degree of offenses."

**Supporting Facts:** "For the jury forms to be adequate, they would have

had to contain not only the elements to each count but also the degree of offense. The verdict Forms were defective by not having the degree of the offense."

**Ground Eight**: "Petitioner Gorman's rights were violated to confront and effective cross examination as guaranteed by the Ohio and U.S. Constitution was violated when the trial court allowed hearsay testimony against the accused."

**Supporting Facts:** "Diane Lampkins (Forensic interviewer /social worker with no medical training, background or history was the one who interviewed the Alleged victim. Gail Horner was the medical physician, Horner and Lampkins testified to hearsay statements from Diane Lampkins report that supposedly came from the Alleged victim. The Alleged victim never testified or corroborated any of the hearsay statements. The trial court never addressed the statements or gave any limiting instructions."

**Ground Nine**: "Petitioner was deprived of effective assistance of trial Counsel in this case in violations of his rights under the Sixth and Fourteenth Amendment of the United States Constitution."

**Supporting Facts:** "Through-out my trial the prosecuting attorney asked leading questions of his witness (the alleged victim) and the majority of which were not objected to by defense counsel."

**Ground Ten**: "Petitioner Gorman's right to due process of the Fourteenth Amendment was violated when the trial court judge, errored in sentencing Petitioner Gorman in violations of Ohio Criminal Rule 32(A) to consecutive sentences."

**Supporting Facts:** "Trial Court did not give reason, when it imposed consecutive sentences and imposed a nonminimum sentence, even though, I have maintained my innocence all through trial, I am still considered a first time offender, P.S.I is clean."

**Ground Eleven**: "The State Committed Prosecutional Misconduct by improperly admitting excluded parts of States Exhibit 3 to the jury which violated Petitioner's rights to due process under the Ohio and United States Constitutions Fourteenth Amendment."

**Supporting Facts:** "The prosecution sent excluded parts of State's Exhibit 3 to the jury, after showing the defense and the trial court judge, that he (prosecutor) was sending something different back to the jury as exhibit 3, it was deliberately and purposely done."

**Ground Twelve**: "Petitioner was deprived of effective assistance of trial counsel, by not objecting to unproven bad acts evidence in violations of Petitioner's right to due process and equal protection under the Sixth and Fourteenth Amendment of the United States Constitution."

**Supporting Facts:** "The prosecution's witness Diane Lampkins (Forensic interviewer) and Detective Hunt testified that I supposedly took pictures of the alleged victim with my cell phone while performing sexual acts and wearing a sexy outfit. This was never testified to by the alleged victim, no pictures of allege sexual abuse recovered from my cell phone. Even though the prosecution kept bringing up the cell phone issue through out closing arguments. State Elicited testimony that alleged victim was sexually assaulted every two weeks for a period of a-year and a half."

**Ground Thirteen**: "Petitioner Gorman's rights were violated under the Sixth and Fourteenth Amendment to equal protection. Also in violation of Ohio Criminal Rule 52(B) plain error. The trial court erred by failing to give proper jury instructions regarding the stipulate polygraph exams taking by Julian Gorman."

**Supporting Facts:** "The trial court judge told the jury that they can use the results of the polygraph test to test my credibility, since the results came back deceptive, after the third time of taking the test, the polygraph examiner said it came back deceptive. I never seen any charts or graphs to prove this and the polygraph examiner was placed on the record as an expert witness."

*See Petition*, Doc. 2.

In his amended petition, petitioner advances the following issue, apparently as a clarification of his earlier claim concerning the testimony of  Diane Lampkins:

"Petitioner was deprived of a fair trial by the admission of impermissible evidence in

the form of opinion from the state's expert witness that the child victim in the petitioner's case was credible and that the alleged sexual abuse had occurred, thereby depriving the petitioner of is due process rights under the Ohio and U.S. Constitution Fourteenth Amendment." Doc. 14. Respondent asserts that each and every claim advanced by petitioner here was procedurally defaulted in state court, and that this Court cannot reach the merits of any of these claims.

## IV.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state

argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Here, it is probably easier to begin the procedural default analysis by identifying which potential claims petitioner has not procedurally defaulted. As described in the procedural history recited above, petitioner, despite the multitude of filings he made at the state court level, only sought review from the Ohio Supreme Court once - in connection with his direct appeal. In his memorandum in support of jurisdiction, he raised three propositions of law: that the trial court erred in allowing hearsay testimony from Diane Lampkins and Gail Horner; that the trial court erred in admitting hearsay statements contained in a social worker's report; and that he did not receive effective

assistance of counsel due to counsel's failure to object to leading questions asked by the prosecutor and failure to object to the use of hearsay documents and testimony. Those claims were also raised at the appellate court level, and were therefore preserved for federal habeas corpus review. However, any other claims were either never presented to the state courts at all, or not appealed to the Ohio Supreme Court. Either of these failures constitutes a procedural default and a corresponding waiver of the claims for purposes of habeas corpus review. *See, e.g., Broom v. Mitchell*, 441 F.3d 392, 400-01 (6th Cir. 2006)(failure to present a claim to the state courts, and the lack of any currently available means to do so, is a procedural default); *Silverburg v. Evitts*, 993 F.2d 124 (6th Cir. May 13, 1993)(failure to appeal to highest court of the state, coupled with the passage of time during which such an appeal can be filed, is a procedural default). Thus, the question here is whether any of petitioner's thirteen grounds for relief which he has stated in his habeas corpus petition are sufficiently related to the three claims which he raised before the Ohio Supreme Court to permit this Court to hear them.

In the original return of writ, respondent has listed, in table form, the state court history of each of petitioner's grounds for relief. The Court has independently examined the record and concludes that, as indicated in the return, grounds two, four, five, six, seven, nine, eleven and thirteen were never raised at any stage of the state court proceedings. Petitioner does not dispute that he failed to raise each of these claims, with the exception of ground nine; his arguments about why he did not raise them are discussed below. As to ground nine, in his petition, petitioner argues that he

raised this claim on direct appeal.

The direct appeal did present a claim of ineffective assistance of counsel. However, in the state court of appeals, petitioner asserted, in support of his claim of ineffective assistance of counsel, that trial counsel improperly "failed to object to much of the error Appellant has set forth above and incorporated by reference." *Return of Writ*, Exhibit Nine, at 15. The other errors set forth in the appellate brief related to the trial court's admission of hearsay testimony, hearsay statements in reports, and the report of a polygraph examiner. Here, petitioner's ninth ground for relief alleges that trial counsel was ineffective for failing to object to leading questions asked by the prosecuting attorney. That aspect of ineffective assistance of counsel was not fairly raised by petitioner's appellate brief, nor was it addressed by the state court of appeals.

A petitioner may not simply assert ineffective assistance of counsel as a general claim in state court, and then argue that any and all alleged errors made by counsel have been preserved for habeas corpus review. Rather, in order to avoid procedurally defaulting claims of ineffective assistance of counsel, if such a claim is presented to the state courts, the specific instances of ineffective assistance raised in the habeas corpus petition must be the same as those raised in state court. Otherwise, the state courts would have been deprived of a meaningful opportunity to address such claims. *See Teagarden v. Warden, Madison Correctional Inst.*, 2011 WL 1659372, *6 (S.D. Ohio May 3, 2011), *adopted and affirmed* 2011 WL 2160466 (S.D. Ohio June 1, 2011), *citing, inter alia, Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also Fautenberry v. Mitchell*, 2001 WL

1763438, *13 (S.D. Ohio December 26, 2011).  As this Court reasoned in *Teagarden*, "Were the rule otherwise, a petitioner could simply make a generalized claim of ineffective assistance of counsel in state court and then raise additional instances  of such conduct in a federal habeas corpus petition without facing a procedural default, " a result which would "run directly counter to the rationale behind the exhaustion and fair presentation doctrines ...."  Therefore, the Court agrees with respondent that none of grounds two, four, five, six, seven, nine, eleven and thirteen were ever presented to the state courts and that, unless petitioner can demonstrate cause and prejudice for this omission, they are procedurally defaulted.

Next, respondent's table shows that grounds one, three, ten and twelve were never properly presented to the state courts because each of those grounds was asserted in petitioner's Rule 26(B) application for reopening filed in the state appellate court, and the denial of that application was not appealed to the Ohio Supreme Court.  Again, petitioner concedes in his petition that he did not appeal any of these claims to the Ohio Supreme Court.  He states, however, that he was not aware of the need to do so given the inadequate time he was permitted to use the law library at his institution.  Because these claims were not presented to the highest court of the state, they are also procedurally defaulted unless there is a reason to excuse that default.

This leaves ground eight, relating to the alleged hearsay testimony allowed from witnesses Lampkins and Horner.  The petition indicates that the issues raised in ground eight were raised on direct appeal.  That is true.  However, respondent contends that

these issues were waived because counsel did not object to the admission of this testimony at trial. Respondent notes that the state court of appeals did not address the merits of those claims for that reason. The state court of appeals opinion confirms that assertion ("the defense did not raise the hearsay and confrontation clause issues at trial and, therefore, forfeited all but plain error on these issues"). A state court may review a claim for plain error without excusing a procedural default. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Further, respondent correctly points out that the basis for enforcing the procedural default here - Ohio's "contemporaneous objection" rule, which requires a defendant to object to certain matters at the time of trial, such as the admission of hearsay evidence or evidence offered in violation of the Confrontation Clause - is an adequate and independent ground for the state court's refusal to hear the claim on the merits. *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 424 (6th Cir. 2003). Thus, it appears that, for one of three reasons - failing to present his grounds for relief at all, failing to appeal the underlying issues to the Ohio Supreme Court, or failing to object at trial to the introduction of allegedly inadmissible evidence - each of petitioner's ground for relief have been procedurally defaulted. That includes his amendments to ground eight relating to the use of witness Horner's opinion to bolster the credibility of the alleged victim. This leaves only the question of whether there is any basis in the record upon which to excuse that default.

## V. CAUSE AND PREJUDICE

The Return of Writ does not expressly address the issues of cause and prejudice,

although it acknowledges that a procedural default can be excused upon a proper showing of cause for the default, and prejudice to the petitioner.  Petitioner has not directly addressed the issue of cause and prejudice either, but his petition does provide some information about why he did not present these claims properly in the state courts.  As to claims which were never raised, his primary assertion is that he was unaware of the claims; as to claims which were raised but not appealed to the Ohio Supreme Court, his primary assertion is that he was unaware of the need to have done so.  The reason he gives for his lack of understanding of the law is that he had only a limited amount of library time allocated to him, and did not come to understand how properly to preserve these claims until he had already missed filing deadlines in the Ohio courts.

As to all of his claims other than the one raised in ground eight, the Court finds no basis in the record for excusing the procedural defaults which occurred.  Generally speaking, " ignorance of the law and procedural  requirements ... is insufficient to establish cause to excuse [a] procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  In that same decision, the Court of Appeals also rejected a claim that limited access to a prison law library excused the default.  Further, petitioner has the burden of proving that the limited amount of time he was permitted to spend in the library actually prevented him from learning such basic procedural requirements as the need to appeal the denial of a Rule 26(B) application to the Ohio Supreme Court in order to avoid procedural default; he has not met that burden. *See, e.g., Trego v. Erwin*,  2006 WL

2708009 (S.D. Ohio September 18, 2006); *see also Pough v. Ohio*, 2006 WL 3241791, *8 (N.D. Ohio Nov. 7, 2006)("any alleged inadequacy of a prison law library is also insufficient to establish cause for excusing procedural default in a federal habeas matter"). Thus, the Court cannot find cause and prejudice sufficient to excuse the procedural default committed with respect to all of petitioner's claims other than ground eight.

Ground eight stands on a different footing, however. Ineffective assistance of counsel, if it rises to the level of a constitutional violation, can excuse a procedural default so long as the claim that counsel was ineffective by failing to preserve the otherwise-defaulted issue for habeas corpus review is itself properly presented to the state courts. *Murray v. Carrier*, 477 U.S. 478 (1986). And in this case, petitioner argued to the state court of appeals that the reason his claims about hearsay testimony and evidence were not properly preserved was due to ineffective assistance of counsel. That claim was decided on the merits by the state court of appeals, *see State v. J.G.A.*, 2009 WL 1700118, *4 (Franklin Co. App. June 16, 2009), and appealed to the Ohio Supreme Court. Thus, it was properly presented to the state courts and, if it is a meritorious claim, it would excuse the procedural default committed by counsel when he did not object to the trial testimony which is the subject of ground eight.

The test for evaluating whether counsel's performance was so deficient that it violated the Sixth Amendment guarantee to the effective assistance of counsel is the familiar two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under

18

that test, the first question focuses on whether counsel's performance fell below the constitutionally-required level of competency expected from criminal defense attorneys. The second question is whether, if counsel did perform inadequately, that performance prejudiced his or her client. Prejudice is demonstrated if, but for counsel's errors, there is a reasonable probability that the outcome of the case would have been different. *Id.*

The state court of appeals properly cited to *Strickland* and held that counsel was not ineffective for failing to object to the introduction of the evidence at issue because that court had "already concluded ... that the statements were not inadmissible hearsay and that admission of the statements did not contravene the confrontation clause." *State v. J.G.A.*, at *4. For purposes of determining if petitioner's counsel was ineffective and that such ineffectiveness excuses the procedural default of the claims made in ground eight of the petition, the Court reviews this state court determination *de novo* - that is, without affording the state court determination the type of deference ordinarily required by 28 U.S.C. §2254(d)(1) . *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006); *see also Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009).

Respondent has not presented a great deal of argument on this issue. In fact, the only comment made in the return about the correctness of the state court's determination on the question of ineffective assistance of counsel is contained in a footnote, which reads, in its entirety, "It is worth noting that the claim [i.e. ground eight] is plainly without merit as well. Because the victim - the declarant - testified at trial, no confrontation issue arose from admitting her prior statements." *Return of Writ*,

Doc. #8, at 20 n.1.  While not directly addressing the issue of ineffective assistance of counsel, this argument does support the state court's determination that counsel was not ineffective because any Confrontation Clause objection - which is the only federal component to ground eight - would have been futile, and counsel cannot be faulted for failing to make a groundless objection.

Although the Court need not afford the state appellate court's decision on this issue any special deference, it is helpful to examine that court's reasoning on the Confrontation Clause issue.  The state court used the same rationale cited in the return, namely that "because J.A.G. underwent cross-examination at trial, the trial court did not violate the state or federal confrontation clauses when admitting the evidence on J.A.G.'s statements at the Advocacy Center."  *State v. J.G.A.*, 2009 WL 1700118, *3.

This conclusion is fully supported by applicable precedent.  In *California v. Green*, 399 U.S. 149, 161 (1970) the United States Supreme Court stated that "none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial."  As the Court of Appeals has observed, "[i]f there was an opportunity to cross-examine there is not a violation of the Confrontation Clause."  *Harrison v. Chandler*, 1998 WL 786900, *3 (6th Cir. October 26, 1998).  In dealing with this precise situation - that is, where the alleged victim made out-of-court statements about sexual abuse which were then admitted into evidence - this Court has held that such a situation "does not trigger any concerns under the Sixth Amendment's Confrontation Clause because the out-of-court declarant

... testified at petitioner's trial and was subjected to unrestricted cross-examination by defense counsel." *Williams v. Brunsman*, 2010 WL 3062853 (S.D. Ohio May 3, 2010), *adopted and affirmed* 2010 WL 3075273 (S.D. Ohio Aug, 4, 2010), *citing, inter alia, Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements").

In this case, the victim appeared at trial and was subject to cross-examination. Counsel could have chosen to ask her about all of the out-of-court statements she allegedly made. For purposes of the Confrontation Clause, it does not matter if counsel chose to question the witness about these statements or not; that clause protects "the opportunity to challenge [an] accuser in a face-to-face encounter in front of the trier of fact," *California v. Green*, 399 U.S. at 156, regardless of whether the defendant or counsel took advantage of that opportunity. Consequently, petitioner's counsel was under no obligation to raise a Confrontation Clause objection to the statements, and his failure to do so did not violate the Sixth Amendment.

Petitioner also argues here that the admission of these statements violated Ohio's evidentiary rule which prohibits the introduction of hearsay statements. However, that is purely a state law claim, and not cognizable in federal habeas corpus. As this Court has often stated,

> [t]o the extent that petitioner raises an issue regarding the alleged
> violation of state law or state evidentiary rules, his claim fails to warrant
> federal habeas corpus relief. A federal court may review a state prisoner's

habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). " '[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.' " *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (other citations omitted)). The Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 388, 897 (6th Cir.2008).

*Strickland v. Warden, Southern Ohio Correctional Inst.*, 2010 WL 4919753, *19 (S.D. Ohio Nov. 29, 2010), *adopted and affirmed* 2011 WL 245574 (S.D. Ohio Jan. 26, 2011). Thus, even if the claim relating to the introduction of hearsay evidence had not been procedurally defaulted - because, for example, counsel should have objected to its introduction on hearsay grounds - this Court could not reach the merits of that claim. Petitioner's claim of improper bolstering, which is the gist of the amendment he filed, is also a state-law based claim; petitioner specifically argues that it is not a Confrontation Clause claim. Thus, even if this claim were properly presented to the state courts (although it does not appear to have been so presented), it is likewise not a claim which may be considered in the context of a petition for a writ of habeas corpus filed in federal court under 28 U.S.C. §2254. For these reasons, no relief is available to petitioner on ground eight.

## VI.  CONCLUSION

The Court has concluded that all of petitioner's claims have been procedurally defaulted, and that he has not met the "cause and prejudice" standard which would enable this Court to review those claims on their merits.  For these reasons, it is recommended that the petition for a writ of habeas corpus be denied and that this case be dismissed.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

23

/s/ Terence P. Kemp
United States Magistrate Judge